Yes, Your Honor. We will be dividing argument with my colleague, Peter Gregori. He'll do rebuttal. The issue on this field is whether the exercise of jurisdiction, in this case pursuant to federal rule 4K2, is consistent with due process. And that requires that there be a claim arising out of or related to those contacts, and the jurisdiction not be unreasonable. Do you concede that there are insufficient jurisdictional contacts with any particular state? Yes. The only jurisdiction is under 4K2. So, there's been something made in the case. There's a suggestion that this court is adverse to a finding jurisdiction under 4K2. That is not the case. Where appropriate, this court has done so. And there is a plethora of contacts, in this case directed to the plaintiff's claims. And there are a plethora of minimum contacts, which, of course, are taken in the aggregate. I'll go to a bird's eye view of them so I can get through them quickly. First is the advertising. Hold this up. I'm not sure the court can see it. This is their advertising that they show. It's directed to attention USA Babes. Shop now and pay later. It's on their Instagram account. It's a post. It also appears as a highlight. Stays up forever unless it's deleted. It's obviously aimed directly at the American consumer. They also advertise in Vogue and Teen Vogue, which are American magazines. They advertise for Black Friday sales on Facebook. That's a very much an American holiday based around Thanksgiving. They have physical presence in America via their distribution center. They store all their goods here. They ship them here. They use our infrastructure to do that. And then they ship them out of there in order to... Seek any kind of relief with respect to goods that are being shipped from the Idaho Center to other countries? No, no relief being sought in that regard. Why do you think that's relevant? It could be Mars for all that matters. The distribution center is particularly aimed... The agents who operate at that center are the same as employees of the defendant under college source. They have no discretion. All they can do is do what they are told to do and they pass the... They take the goods and then the product. They send them to the... Maybe I'm not fully understanding that. So if I send a package through FedEx, they are now my employee? No, not at all, your honor. FedEx has discretion as to how it delivers and what it does. The delivery center in Idaho has no discretion, whatever. It can only ship... It has to package what it's told to package. It has to ship what it's told to ship. It has to ship it where it's told to ship it. It has no discretion in how it does that. In fact, it uses... But it doesn't sound like your claims arise out of any of the activities that are taking place at the Idaho facility because you said you're not seeking any relief with respect to infringing goods that are leaving that facility. They use the facility to advertise that they can deliver the goods in two days to an American site. And in that sense, we of course are using... It arises out of the facility being in America and relates to the facility being in America. So yes, it does arise out of the existence of that facility here. They advertise, they have FDA certification that only applies in America. There's no reason to have that otherwise. They've applied for a trademark in America. No application. These are clearly aiming at America, as is the advertising and as is the distribution center to the extent that it says we can deliver you faster than anywhere else in the world. So let me just... Are you splitting your argument time in the opening or you're doing the whole opening? I'm going to do the whole opening, Your Honor. Okay, all right. So then the clock should be set to reflect the full time. And my colleague will do rebuttal. Okay. So the contacts here are very extensive and very much aimed at America. Trademark, FDA, advertising to USA Babes, advertising in American magazines. So that turns the discussion to whether jurisdiction would be unreasonable. And here we have the Burger King Dole food factors. It's of course, defendant's heavy burden to show that it is unreasonable. And there are seven factors, the extent of their purported injection into America. We've discussed that. It's very much more than any case, any Ninth Circuit case that I've seen. The defendant's burden is zero. All they say is they have to get a visa to come to America. The extent of the conflict with Australian sovereignty is zero. Australia has absolutely no interest in the enforcement of an American trademark. America's interest in adjudicating the dispute is very great. What about the claim that the majority of the witnesses and evidence are in Australia? Yes, Your Honor, that's absolutely untrue. Every non-party witness is in America. The, all of the witnesses at the distribution center, which would go to damages, all of them are in America. All of their records are in America. All of the experts on confusion are in America. All the buyers who would be confused are in America. There isn't a single witness that has been identified that would be in Australia other than possibly the principals. I take it that you would be following United States law in this case of trial in either jurisdiction. Yes, but Australia would not be a very good place to do that for a couple of reasons. First, they're not familiar with the Lanham Act, which is a very sophisticated... I think we can all agree that Australian judges are very good. I know some of saying they're not second rate jurisdiction, but of course we deal with the American law. How much of your case is based upon the importance of United States judges determining the application of United States law? Well, I think Comittee would suggest that that's the only appropriate way to do it. And in Australia, one has to understand it is not a very good forum. You can't get oral discovery in Australia. Even written discovery is very difficult to obtain. It's unlikely that an Australian court would even hear this case. The High Court of Australia has held in a patent context, which is similar in territoriality to a trademark case. It has stated no action could be maintained in Australia for the infringement of an English patent. Well, I suggest that it probably wouldn't like to maintain an action for an American trademark either. Counselor, your time has expired if you want to save time for rebuttal. Thank you very much. We'll hear from Mr. Grossman. Thank you, Your Honors. Addressing one of the first statements from my counterpart, the Ninth Circuit, in fact, as far as we know, has actually never confirmed jurisdiction in a published decision under 4K2. And very recently, actually, it has jurisdiction under 4K2 in circumstances in the AMA case, which I think are extremely instructive here. What do you say to the suggestion that this case could not be brought in Australia? Yes. Yes, Your Honor. It, of course, could. And the plaintiff's complaint actually does not only seek Lanham Act statutory infringement. It also alleges common law unfair competition claims. And the plaintiff itself stated when it threatened to sue and then cited to this in its own brief, that Isla, the San Francisco company, has itself shipped and sold products to Australia and to customers in Australia and, quote, may hold prior common law trademark rights there as well. So Isla itself has made the claim against my client, Alia Skin, that it, in fact, has rights in Australia. And of course, skipping ahead, Your Honor, to some of the reasonableness factors, in terms of efficiency, of course, any claim here wouldn't be the end of litigation. It would, of necessity, have to go to Australia to be enforced because the defendant, the Australian defendant, has no... But the problem isn't enforcement. The problem is which court is in a better position to properly interpret American law and American statutes. I guess you'd have to assume that we do a better job with our own materials than the Australians, as good as they are, would do with our... Just because of their experience and training, et cetera, in a different type of law system. So why isn't it fair that we have American judges in this case, which seems to me to be very close, why wouldn't it tip the scales towards American judges making the decision on American law and American statutes? In fairness. Yes. And I don't disagree with your assumption that interpreting a specific U.S. statute would be easier for a U.S. judge, federal judge. But that is not the only consideration, obviously, for personal jurisdiction considerations. And that wouldn't be the only claim by plain its own... So what do you say to the statement that your adversary just made, that contrary to the suggestion below, in fact, virtually all the witnesses are here? There's no basis for that statement. Literally all of the witnesses are in Australia. The two founders submitted declarations. In a trademark case, what you investigate and want to figure out is how did you come up with your name? Did you do any research? Did you know about the senior user? And the two founders of the company submitted declarations in the lower court explaining how they did that, explaining what their business is about, how they market... Wouldn't another consideration be whether American consumers are confused? That would presumably turn on surveys of American consumers by American experts. Yeah, it certainly could, but there is no evidence of actual American consumer confusion. And certainly it's early, but there is no such evidence. The harm here is not U.S. specific. The harm that the plaintiff in this trademark infringement matter is complaining of is the fact that the defendant, the Australian company, is distributing its product internationally on the internet and has obtained a certain level of notoriety. What percentage of the goods that are shipped worldwide are shipped from the Idaho facility? Currently, I don't know the answer to that, Your Honor. I do know that the Idaho facility was chosen at the inception of the company, and it was chosen when there were no U.S. customers because of low-cost considerations. It was chosen because it was the low-cost... There's nothing in the record about the volume of activity around the Idaho facility? Only, Your Honor, that in the beginning, the Idaho facility was used to ship products back to New Zealand and Australia where the company was doing business. Is it correct that it's used to ship to all countries as a general matter except for Australia and New Zealand? I'm not sure that it's used to ship to China. Australia, New Zealand, and China are the overwhelming majority of the defendant's distribution, and I don't know that the Idaho facility ships to China, but it does not ship anymore to Australia and New Zealand. Does the company pay any taxes domestically within the United States with respect to the Idaho facility? There is nothing in the record on that, and not that I'm aware of, Your Honor. The company has no operations here, has no assets here, has no employees here. And the volume of sales within the United States is about 10% of the company's sales? Less than 10%. Well, I mean, is less 9.8 or is it 0.2? I mean, what does it say? 2% is what was calculated for California, approximately 2%. At the time of the briefing below, it was less than 10%. That number has not gone up since then, so it remains a single-digit percentage to the U.S. of its overall distribution worldwide. And the AMA case, which I think is directly on point for this, the defendant, the Polish defendant, had 20% of its customers in the United States and generated revenue from those customers. It wasn't targeted advertising of the sort, you know, with the USA Babes type comment that we have here. Doesn't that distinguish AMA? I don't think it does, no, Your Honor. First of all, in AMA, there was geo-targeted advertising through contracting with a U.S. company that would target American users on the website when they logged on. There were also two contracts, one with a Virginia company and one with an Arizona company, in order to make sure that the defendant, the Polish defendant's services and products were sufficiently and efficiently distributed throughout the United States. And that USA Babes Instagram posting should not be in the record. It was not in the record below. Judge Gilliam, during oral argument, responded to something that was said regarding a PTO, a trademark application, and the status of that, and directed counsel to provide him with evidence regarding that particular submission. Counsel instead submitted post-filing information, which is not relevant to the jurisdictional analysis, which included this ephemeral posting relating to a product called Afterpay. It is not a direction to all U.S. customers, please buy our product. It is an announcement about a specific type of PayPal-type product that is an Australian company called Afterpay, and the actual advertisement says that it's available in Australia, New Zealand, U.S., and whatever other countries it's available in. But in any case, that was an improper submission. It's a post-filing attempt to obtain jurisdiction, which is improper. Let me ask a question, if I could, please. I'd like to get your response to the argument made, which seems to me to have some substance. When you come in and you say, hands off, I'm not involved at all, it seems a little inconsistent to ask for a copyright and also to petition that your product is safe. What's your response when you come in and actually use the facilities of government that we have for our citizens? Why wouldn't that be important in the mix that we have to discuss to come to a conclusion whether the district court was correct? Sure. The trademark application was in fact abandoned, so we don't believe that it either was jurisdictionally relevant, and certainly it is not now because it does not exist. It was also not jurisdictionally relevant, and we believe it was also subject to the governmental exception regarding jurisdictional contacts. That's your answer? Yes, Your Honor. Thank you. All right. Thank you, counsel. Your time has expired. I'll set the clock for two minutes for rebuttal. You may proceed, Mr. Gregora. Yes, Your Honor. Basically, this ought to be an easy case. As counsel said, Alia has no assets here. Obviously, it does. That's where its inventory is in the state of Idaho. That's where they ship everything except to Australia, New Zealand, and China. Is it fair to his argument that the AMA decision is controlling? No. The AMA decision is utterly irrelevant. We're dealing with a passive thing there where the defendant didn't sell any products. There's almost no relationship at all. It was a passive website. I thought 25% of the activity on the site was from Americans. Americans viewed it, but in fact, the defendant in that case sold nothing and never shipped a single product anywhere. People just watched. My understanding, if I'm understanding which case we're referring to, is AMA was a porn site, so viewing was the product. If 25% of the viewers were Americans, then that's the consumption of the product. Maybe so, but it was a passive site. You didn't buy anything there. People just watched and advertisers, who were third-party advertisers, advertised on the site. There was no interaction between the defendant and the viewers, none. It was a completely passive site. This is an active site where people actually buy things. The advertising is specifically directed to people in the United States, USA-based. What do you say to the claim that that shouldn't be in the record? It is in the record. If they wanted it not in the record, what they should have done was move to strike and got a ruling from the court. They didn't. You can't object to something that's in the record when you didn't move to take it out of the record. I'm not going to argue about whether it's properly in the record or it's not properly in the record in the sense of whether we should have filed it or we didn't. Of course, we weren't counsel below. I will tell you this. It is in the court. Nobody objected to it. Nobody moved to strike it. It's there. If you don't want something in the appellate record, you move to strike it. That wasn't done. It's in the record. The fact is that if you want to complain about that and say, well, it's not in the record, we're going to dismiss for lack of personal jurisdiction, what happens? It's not race judicata. We file the next day. Your time has expired. The case just argued will be submitted.
judges: Wallace, Rakoff, Collins